UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

**SIDAHMED ZOULIKHA**,                                    Case No. 3:13-cv-01872-KI

                          Plaintiff,                          OPINION AND ORDER

        v.

**COMMISSIONER, SOCIAL SECURITY**
**ADMINISTRATION**,

                          Defendant.

        Sara L. Gabin, P.C., Attorney at Law
        14523 Westlake Dr.
        Lake Oswego, OR 97035-7700

                  Attorney for Plaintiff

        S. Amanda Marshall
        United States Attorney
        District of Oregon
        Ronald K. Silver
        Assistant United States Attorney
        1000 SW Third Ave., Ste. 600
        Portland, OR 97201-2902

Kathryn A. Miller
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Ave., Ste. 2900 M/S 221A
Seattle, WA 98104-7075

       Attorneys for Defendant

KING, Judge:

Plaintiff Sidahmed Zoulikha brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying plaintiff's application for disability insurance benefits ("DIB").  I affirm the decision of the Commissioner.

## BACKGROUND

Zoulikha filed an application for DIB on August 3, 2010, alleging disability beginning October 1, 2009.  The application was denied initially and upon reconsideration.  After a timely request for a hearing, Zoulikha, represented by counsel, appeared and testified before an Administrative Law Judge ("ALJ") on August 8, 2012.

On August 30, 2012, the ALJ issued a decision finding Zoulikha not disabled within the meaning of the Act and therefore not entitled to benefits.  This decision became the final decision of the Commissioner when the Appeals Council declined to review the decision of the ALJ on September 6, 2013.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or

mental disability.  42 U.S.C. § 423(a)(1).  In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act.  42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months.  42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).  An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability.  The evaluation is carried out by the ALJ.  The claimant has the burden of proof on the first four steps.  Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007); 20 C.F.R. §§ 404.1520 and 416.920.  First, the ALJ determines whether the claimant is engaged in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b) and 416.920(b).  If the claimant is engaged in such activity, disability benefits are denied.  Otherwise, the ALJ proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments.  A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]"  20 C.F.R. §§ 404.1520(c) and 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

Page 3 - OPINION AND ORDER

If the impairment is severe, the ALJ proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d) and 416.920(d).  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one that is presumed to be disabling, the ALJ proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past.  If the claimant is able to perform work she performed in the past, a finding of "not disabled" is made and disability benefits are denied.  20 C.F.R. §§ 404.1520(f) and 416.920(f).

If the claimant is unable to perform work performed in the past, the ALJ proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his age, education, and work experience.  The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities.  Parra, 481 F.3d at 746. The claimant is entitled to disability benefits only if he is not able to perform other work.  20 C.F.R. §§ 404.1520(g) and 416.920(g).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards.  Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" and is more than a "mere scintilla" of the evidence but less than a preponderance.  Id. (internal quotation omitted).  The court must uphold the ALJ's

findings if they "are supported by inferences reasonably drawn from the record[,]" even if the

evidence is susceptible to multiple rational interpretations.  Id.

## THE ALJ'S DECISION

The ALJ found Zoulikha suffers from the severe impairment of congenital varicose

veins, which does not meet or medically equal the requirements of any of the impairments listed

in 20 C.F.R. § 404, Subpart P, Appendix 1.  He concluded Zoulikha can perform light work as

follows:  Zoulikha can stand and walk for two hours in an eight-hour day; sit six hours a day; lift

20 pounds occasionally and ten pounds frequently; should not frequently push or pull with the

right lower extremity; can occasionally climb stairs and ramps; should not climb ladders, ropes or

scaffolds; can occasionally stoop, kneel, crouch, and crawl; should avoid concentrated exposure

to extreme cold, heat, wetness, and humidity; and should avoid concentrated exposure to

vibration and serious workplace hazards (such as dangerous machinery and heights).

Given this residual functional capacity ("RFC"), Zoulikha cannot perform his past

relevant work of a sales clerk, line cook, waiter, bus boy, awning installer, ceramics caster, or

baker.  The ALJ concluded Zoulikha can, however, perform work as a hand packager, production

assembler, and food assembler.

## FACTS

Zoulikha was 34 years old on his alleged disability onset date.  He attended the equivalent

of two years of college in Algeria, where he studied ceramic design.  He left Algeria and came to

the United States in 2005.  He speaks Arabic, French and English.  Zoulikha worked full-time

through 2009 and into 2010, but significantly reduced his hours thereafter.  He testified that he

stopped working in 2010 for a period of almost eight months because he experienced an episode

on the job where his right leg locked and he could not walk.  He went back to work for three

months in another restaurant, but was let go because he was could not move quickly enough.  At

the time of the hearing, he was working two to three days a week for a temporary agency in the

restaurant industry.

By his own history, he was born with congenital varicose veins in his right leg.  He was

told by a doctor in France that pain medication would complicate his impairment.  The record

contains very little in the way of medical evidence.  He sought treatment from the OHSU

emergency room on February 15, 2008 for spontaneous bleeding in his right leg.  A vascular

surgeon placed stitches in Zoulikha's leg to stop the bleeding.  Zoulikha was instructed to follow-

up in the Vascular Surgery Clinic and he was discharged home in good condition.  The

emergency room physician gave Zoulikha a prescription for a "5higher leg compression

stocking" and gave him "information on free and low-cost clinics and information on varicose

veins."  Tr. 257.

The state agency referred Zoulikha to Ting Zhou, M.D., who assessed Zoulikha's

functional capabilities on October 21, 2010.  Zoulikha described worsening symptoms over the

last nine months, with symptoms beginning approximately 2-1/2 hours into standing.  He

reported working in food preparation approximately 25 hours a week.  Dr. Zhou described

Zoulikha as able to easily move from the chair to the examination table, and as looking

comfortable while sitting.  He had no difficulty removing his shoes and socks.  Zoulikha could

walk without any obvious difficulty, and he showed no signs of poor effort or inconsistencies.

Dr. Zhou noted "significant gross distortion of varicose veins involving the entirety of his right

upper and lower leg.  There is evidence of excoriation and scab from previous bleeding. . . .

There are gross tortuous varicosities that appear to be worse on the anterior and posterior aspect of his right leg." Tr. 252. Dr. Zhou diagnosed Zoulikha with (1) severe venous tortuousities involving the entirety of his right leg consistent with varicose veins; (2) superficial cellulitic changes; and (3) significant lymphedema and venous stasis.[1] Dr. Zhou opined that Zoulikha could only stand and walk up to two hours, but could sit without limitations. He thought Zoulikha would need a cane for long distances or uneven terrain. Zoulikha could lift and carry up to 20 pounds occasionally, and ten pounds frequently, but was limited to occasional climbing, stooping, kneeling, crouching, and crawling. Zoulikha should not work around heavy machinery or in temperature extremes, but had no other environmental limitations.

Zoulikha sought treatment again on March 21, 2011, from Kenneth Janoff, M.D. Dr. Janoff described Zoulikha's right leg as being shorter than the left, with a large port wine stain on the lateral thigh, "huge clusters of varicosities throughout the leg and onto the foot," and "numerous veins that are eroding through the skin." Tr. 258. Dr. Janoff noted ischemia[2] in the fourth and fifth toe as well as swelling, but no deep vein thrombosis or injury. Zoulikha reported not working due to the pain in his leg. Dr. Janoff recommended compression therapy and a consultation with John Kaufman, M.D., at OHSU to learn about endovascular techniques.

Zoulikha testified that when he sits for longer than 20 minutes, his leg feels numb and painful and he cannot focus. If his leg is elevated at a 45 degree angle, he testified he can sit for

---

[1]Venostasis means "an abnormal slowing or stoppage of the flow of blood in a vein." www.merriam-webster.com/medlineplus/venostatis (last visited Jan. 29, 2015).

[2]Ischemia means "deficient supply of blood to a body part (as the heart or brain) that is due to obstruction of the inflow of arterial blood (as by the narrowing of arteries by spasm or disease)." www.merriam-webster.com/medlineplus/ischemia (last visited Jan. 29, 2015).

two to three hours.  Elevating the leg does not ease the pain, but relieves the pressure he feels.

He later testified that he needed to lie on his back with his leg elevated to ease the pressure.

## DISCUSSION

Zoulikha challenges the ALJ's opinion on two bases:  (1) the ALJ erred in his credibility

analysis; and (2) the case should be remanded for the ALJ to consider an examination conducted

after his decision.

I.    Zoulikha's Credibility

The ALJ found Zoulikha's testimony about his limitations not entirely credible.  No

doctor has found Zoulikha disabled, or as having limitations greater than the RFC.  Additionally,

Zoulikha had received minimal treatment.  While the ALJ conceded this was partly because of

Zoulikha's lack of insurance and limited financial resources, the ALJ also pointed out Zoulikha

had not sought low-cost treatment options and had not applied for the Oregon Health Plan.

Furthermore, Zoulikha continues to work busing tables, when he says standing and walking are

painful for him.  In addition, he does not take medication, does not wear support stockings, but

uses a cane no one prescribed for him.

When deciding whether to accept the subjective symptom testimony of a claimant, the

ALJ must perform a two-stage analysis.  In the first stage, the claimant must produce objective

medical evidence of one or more impairments which could reasonably be expected to produce

some degree of symptom.  Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007).  The

claimant is not required to show that the impairment could reasonably be expected to cause the

severity of the symptom, but only to show that it could reasonably have caused some degree of

the symptom.  In the second stage of the analysis, the ALJ must assess the credibility of the

claimant's testimony regarding the severity of the symptoms.  Id.  The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony."  Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001).  General findings are insufficient to support an adverse credibility determination and the ALJ must rely on substantial evidence.  Id.  "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each."  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006).[3]

The ALJ provided specific, clear and convincing reasons to question Zoulikha's credibility.  First, although the ALJ cannot reject subjective pain testimony solely because it was not fully corroborated by objective medical evidence, medical evidence is still a relevant factor in determining the severity of the pain and its disabling effects.  Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).  Here, no physician suggested Zoulikha was more limited than the RFC developed by the ALJ.  Indeed, after a careful physical examination, Dr. Zhou opined Zoulikha could perform work while seated, and could stand and walk for up to two hours in an eight-hour day.

Zoulikha argues the lack of medical evidence in the record is due to his ignorance about the availability of county public health care.  Zoulikha also contends he had previously misunderstood how to access care.  To the contrary, however, even before Zoulikha's alleged

---

[3]To the extent the Commissioner suggests a less rigorous standard should apply here, the Ninth Circuit has rejected her arguments.  See Burrell v. Colvin, __ F.3d __, 2014 WL 7398892 (9th Cir. Dec. 31, 2014) (reasserting that the ALJ must provide "specific, clear and convincing reasons" to support a credibility analysis).

disability onset date, the emergency room physician supplied him with information about low-cost clinics.  Tr. 257.  The fact that a claimant's symptoms are not severe enough to motivate him to seek treatment "is powerful evidence regarding the extent" of the symptom.  Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

The ALJ also noted Zoulikha's failure to wear support stockings, failure to take pain medications, and his use of a cane that was never prescribed.  Zoulikha argues that he testified he cannot afford support stockings, but his testimony is much less clear than that.  He said, "To see a doctor for $200 and after the doctor will make the measurements and after they will send you to specialists and the specialists will give you much you will get to pay.  I didn't have that."  Tr. 57.  He never mentioned that the emergency room had given him a prescription for the stockings, thus avoiding the need to see a doctor for measurements.[4]  An "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment" is a permissible credibility factor.  Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008).

The other reasons are less convincing; Zoulikha testified he was told pain medications would complicate his impairment, thus explaining his decision not to use over-the-counter pain medications.  Further, he has not been *prescribed* any pain medications, so his failure to take prescribed medication is not a convincing reason to find him not credible.  Additionally, while the ALJ commented Zoulikha has never been prescribed a cane, Dr. Zhou recommended he use a cane in some circumstances.  Similarly, with respect to Zoulikha's part-time work busing tables, which requires him to stand and walk all day, there is no evidence Zoulikha had any other

---

[4]I note, too, an invoice in the record dated December 15, 2010 for support stockings to be mailed to Zoulikha costing $41.82, an amount which had been paid.  Tr. 256.

options available to him.  These were not clear and convincing reasons.  Nevertheless, the fact

that the ALJ improperly considered some reasons for finding plaintiff's credibility undermined

does not mean that the ALJ's entire credibility assessment is improper.  Batson v. Comm'r of

Soc. Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2004).  The ALJ's credibility analysis is

supported by substantial evidence.

II.    Additional Evidence not Accepted by the Appeals Council

Zoulikha submits with his opening memorandum a medical record dated November 14,

2012 and a letter dated December 6, 2012.  Kristin Behle, M.D., examined Zolikha three months

after his hearing before the ALJ and, at that time, diagnosed him with Klippel Trenaunay

syndrome.[5]  In her letter, she noted he has a

> very large cluster of varicose veins and port wine like stain covering most of his
> right leg.  This actually deforms his leg and has affected how he walks.  Over long
> term it can erode the bone or cause blood clots.  It is becoming increasingly
> painful and he is having more problems with spontaneous bleeding.

Pl.'s Ex. 2, at 1.[6]  She sought charity care for Zoulikha with the OHSU Vascular and

Hemangioma Clinic.

---

[5]"Klippel-Trenaunay syndrome is a condition that affects the development of blood
vessels, soft tissues, and bones.  The disorder has three characteristic features:  a red birthmark
called a port-wine stain, abnormal overgrowth of soft tissues and bones, and vein
malformations."  www.ghr.nlm.nih.gov/condition/klippel-trenaunay-syndrome (last visited Jan.
29, 2015).

[6]Zoulikha repeatedly mischaracterizes Dr. Behle's statements in his briefing.  For
example, Dr. Behle did not "observe[] . . . further complications of bone erosion, deep vein
thrombosis and bleeding that had progressed to a point affecting Zoulikha's ability to focus."
Pl.'s Reply 2.  Dr. Behle reported over the long term Zoulikha's condition could result in such
complications.  Her chart notes reflects one incident of spontaneous bleeding.

Zoulikha submitted these medical records to the Appeals Council, which returned them to him on the basis that they post-dated the ALJ's decision. Zoulikha argues the Appeals Council's reasoning is faulty, that the records are relevant to explain his ongoing condition, and that I should remand the case for the ALJ to consider this evidence.

As the Commissioner points out, and as Zoulikha agrees, I cannot review the Appeals Council's refusal to make the November 2012 medical records a part of the record. Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1161–62 (9th Cir.2012). However, I agree with Zoulikha that I may consider new evidence added to the record when determining whether the ALJ's conclusion was supported by substantial evidence. See Taylor v. Comm'r of Soc. Sec. Admin., 659 F.3d 1228, 1232 (9th Cir. 2011) (a court may "consider [a] physician's opinion, which was rejected by the Appeals Council, to determine whether, in light of the record as a whole, the ALJ's decision was supported by substantial evidence and was free of legal error"). "Where the Appeals Council was required to consider additional evidence, but failed to do so, remand to the ALJ is appropriate so that the ALJ can reconsider its decision in light of the additional evidence." Id. at 1233.

Regardless of whether the November and December 2012 medical records are relevant to Zoulikha's condition prior to the ALJ's decision just a few months earlier, Dr. Behle's opinion does not change the fact that substantial evidence supports the ALJ's decision. Dr. Behle–who had the same amount of contact with Zoulikha as did Dr. Zhou–identifies no limitations greater than those enumerated by Dr. Zhou. In fact, Dr. Zhou's examination is more thorough in that respect than is Dr. Behle's. In sum, considering the record as a whole, the ALJ's decision was supported by substantial evidence and was free of legal error.

## CONCLUSION

The findings of the Commissioner are based upon substantial evidence in the record and
the correct legal standards.  For these reasons, the court affirms the decision of the
Commissioner.

IT IS SO ORDERED.

DATED this _____2nd_____ day of February, 2015.


                              /s/ Garr M. King_____
                              Garr M. King
                              United States District Judge